IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHNSON SERVICE GROUP, INC.,     §
                                 §
                    Plaintiff,   §
                                 §  Civil Action No. 3:10-CV-1988-D
VS.                              §
                                 §
OLIVIA FRANCE, et al.,           §
                                 §
                    Defendants.  §

<u>MEMORANDUM OPINION</u>

Plaintiff Johnson Service Group, Inc. ("JSG") applies for a preliminary injunction against defendant Olivia France ("France") seeking to enjoin France's alleged violation of her employment agreement with JSG (the "Agreement"), breach of her duty of loyalty to JSG, and misappropriation of JSG's confidential information, including its trade secrets.[1]  For the reasons that follow,[2] the court grants the application.

I

This action arises out of France's resignation as an employee of JSG.  JSG is an employee staffing company that provides technical workers to industrial businesses, including those in the

_____

[1]Plaintiff's preliminary injunction application is before the court under the procedure permitted by Fed. R. Civ. P. 43(e) and is being decided on the papers without an evidentiary hearing.  *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB,* 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd,* 189 Fed. Appx. 965 (Fed. Cir. 2006).

[2]Pursuant to Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion.

aerospace industry. JSG hired France to work as Branch Manager of its Texas office in March 2010. She was responsible for developing and maintaining relationships with JSG's staffing clients. The Agreement JSG reached with France includes non-compete clauses that provide that, within six months of terminating her employment with JSG, she will not (1) solicit business from JSG's customers; (2) engage in business similar to JSG's within a 50-mile radius of any JSG office, or (3) recruit or hire JSG employees to work for other companies. The Agreement also provides that France will keep trade secrets and other confidential information in confidence during employment with JSG and, when relevant, return such information to the company at the termination of her employment. The Agreement also contains a choice of law clause that provides, in pertinent part, that "This agreement shall be construed in accordance with the Laws of the State of Illinois." P. App. 9.

In August 2010 France began negotiating a staffing services agreement ("SSA") with Barnes Aerospace, Inc. ("Barnes") on behalf of JSG. The negotiations involved her traveling to Barnes's manufacturing facility in West Chester, Ohio to learn about Barnes's processes and requirements. She also became familiar with JSG's expected price schedule for its contract with Barnes, as well as the employees whom JSG expected to present to Barnes for placement. JSG's agreement with Barnes was never finalized. France resigned from her employment with JSG on September 2, 2010.

She then began working for defendant Apollo Design Services, Inc., d/b/a Apollo Professional Solutions, Inc. ("Apollo") out of her home in Duncanville, Texas. On September 7, 2010 Apollo began placing employees at Barnes, including at least one employee——Dallas Flanagan ("Flanagan")——whom JSG had previously considered for placement at Barnes.

JSG alleges that France breached the Agreement by failing to secure the Barnes contract for JSG; beginning employment negotiations with Apollo during the course of her employment with JSG; using and disclosing JSG's confidential information to secure the Barnes contract for Apollo, as well as Flanagan's employment with Apollo; and engaging in a business similar to JSG's within 50 miles of its offices. JSG also avers that France breached her duty of loyalty by negotiating her employment with Apollo while employed by JSG and by using JSG's confidential information to identify Flanagan as a candidate for employment with Apollo and placement at Barnes. Finally, JSG alleges that France misappropriated JSG's trade secrets when she used JSG's confidential sales, pricing, customer, and employee information to compete against JSG as an Apollo employee.

France maintains that the non-competition provisions in the Agreement are unenforceable under Illinois law, which she argues applies under the Agreement's choice of law provision; even if the non-competition provisions are enforceable, she has not breached

them; she has not breached the geographical restrictions in the Agreement because, although she works out of her Duncanville, Texas home, all of her clients are located outside the state of Texas; she has not solicited JSG employees, in violation of the Agreement, because JSG never finalized an agreement to place JSG employees with Barnes; she never encountered confidential information or trade secrets during her tenure with JSG; and she has not disclosed any such information to Apollo. France therefore contends that she could not have misappropriated confidential information or trade secrets or disclosed them to JSG in violation of the duty of loyalty.

II

To obtain a preliminary injunction, the party seeking relief must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd,* 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). Although the decision to grant a preliminary injunction is within the court's discretion, it is an extraordinary remedy that should only be granted if the movant has

clearly carried its burden of persuasion on all four elements. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.,* 328 F.3d 192, 196 (5th Cir. 2003); *Miss. Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985).

### III

As a threshold matter, the court must address the parties' dispute about whether the Agreement should be interpreted under Texas or Illinois law. In its application for a preliminary injunction, JSG relies on Texas law. France relies on Illinois law. She contends that Illinois law governs the interpretation of the Agreement because it includes a choice of law clause that provides for the application of Illinois law, and because the law of the Texas forum honors choice of law clauses in employment agreements. JSG responds that the Agreement's enforceability must be determined under Texas law because enforcement of the Agreement's choice of law clause would violate fundamental Texas public policy.

Federal courts exercising diversity jurisdiction apply the choice of law rules of the forum state——here, Texas. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Bailey v. Shell W. E & P, Inc.,* 609 F.3d 710, 722 (5th Cir. 2010). The Agreement provides that Illinois law governs its interpretation. "Texas choice-of-law rules provide that if the parties have expressly agreed that the contract is to be governed by the law of

a particular state, that intention prevails." *Budge v. Post*, 643 F.2d 372, 373 n. 1 (5th Cir. Unit A Apr. 1981). *See also Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) (adopting "most significant relationship" choice of law test in all cases "except those contract cases in which the parties have agreed to a valid choice of law clause").

JSG relies on *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), for the proposition that, because the law governing enforcement of non-compete agreements is fundamental policy in Texas, the Agreement must be interpreted under Texas law.[3] In *DeSantis* the court held that because enforcement of non-compete clauses is a matter of fundamental public policy, and the law of the state chosen by the parties (Florida) would have enforced an agreement that violated the fundamental policy of Texas, Texas law governed the interpretation of the non-compete clause. *DeSantis*, 793 S.W.2d at 681. The court followed the approach prescribed in the Second Restatement of Conflict of Laws § 187 (1971). The enforceability of an agreement is not an issue that can be resolved by the parties' explicit provision. *See id.* at § 187 cmt. d. In

---

[3]JSG also cites *Drummond American LLC v. Share Corp.*, 692 F.Supp.2d 650 (E.D. Tex. 2010), where the court applied Texas law despite a choice of law clause that provided the contract should be interpreted under Illinois law. But in *Drummond* the court applied Texas law because both parties relied on Texas law in their briefs. The *Drummond* court did not indicate that Texas law would necessarily apply where the choice of law issue was contested. *See id.* at 653 n.1.

such cases, § 187(2) directs the court to apply the law of the state chosen by the parties unless that state has no substantial relationship to the parties or the application of the parties' chosen law would be contrary to a fundamental policy of a state with a materially greater interest. See *id.* at § 187(2). The *DeSantis* court held that it would violate the fundamental public policy of Texas to enforce the non-compete clause under Florida law and that Texas had a materially greater interest in the parties' agreement than did Florida. *DeSantis*, 793 S.W.2d at 680-81. Thus the court applied Texas law to interpret the parties' agreement. *Id.* at 680.

*DeSantis* does not require the court to apply Texas law because the Agreement is enforceable under Illinois or Texas law. Covenants not to compete are enforceable in Texas so long as they (1) are "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made" and (2) contain only reasonable limitations as to time, geographical area, and scope of activity to be restrained. Tex. Bus. & Com. Code Ann. § 15.50(a) (Vernon 2002 & Supp. 2010). In the present case, the non-compete clauses contained in the Agreement are part of an otherwise-enforceable employment contract, and the time, geographical area, and scope of activity limitations are reasonable. The Agreement states that, for a period of six months following the termination of France's employment, she will not "solicit any business from the then

- 7 -

customers of the Employer or from potential customers of Employer that Employee may have contacted or been assigned to." P. App. 8. "A restraint on client solicitation in a personal services contract is . . . unreasonable if it extends to clients with whom the employee had no dealings during [her] employment," but a restraint "limited to current customers is not necessarily unreasonable on its face." *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 660 (Tex. App. 2010, no pet.). In *EMS* the court concluded that a non-compete agreement was reasonable where, as here, it prohibited only solicitation of customers with whom the former employee had dealings in the former position. *Id.* Moreover, "[t]wo to five years has repeatedly been held as a reasonable time [limitation]," *Gallagher Healthcare Insurance Services v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App. 2009, pet. filed), and the restraint here lasts only six months. And Texas courts have upheld geographical limitations preventing competition within a metropolitan area, as the 50-mile limitation essentially does here. *See, e.g., Amey v. Barrera*, 2004 WL 63588, at *6 (Tex. App. Jan. 15, 2004, no pet.) (mem. op.). *See also Cobb v. Caye Publ'g Grp., Inc.*, 322 S.W.3d 780, 783-84 (Tex. App. 2010, no pet.) ("Generally, a reasonable area for purposes of a covenant not to compete is considered to be the territory in which the employee worked while in the employment of [her] employer."). Additionally, JSG maintains its principal place of business in Illinois, so Illinois does have a substantial

relationship to the parties. Because the non-compete clauses are enforceable in Texas, and it would not violate the fundamental public policy of Texas to enforce the Agreement under Illinois law, the court will apply the parties' selection of Illinois law to interpret the Agreement.

## IV

Turning to the first element of the preliminary injunction test, the court finds that JSG is likely to succeed on its claim under Illinois law that France breached the non-compete clauses in the Agreement.

## A

The court concludes that the non-compete provisions of the Agreement are enforceable under Illinois law. In Illinois, the enforceability of a restrictive covenant is a question of law. *Giffney Perret, Inc. v. Matthews*, 2009 WL 792484, at *6 (N.D. Ill. 2009) (citing *Lawrence & Allen, Inc. v. Cambridge Human Res. Grp., Inc.*, 85 N.E.2d 434, 440 (Ill. App. Ct. 1997)). "Covenants not to compete are a restraint on trade and, as such, are strictly construed by courts to ensure that their intended effect is not to prevent competition *per se*." *The Agency, Inc. v. Grove*, 839 N.E.2d 606, 613-14 (Ill. App. Ct. 2005). To be enforceable, a restrictive covenant must meet two requirements. First, it must be ancillary to a valid contract or employment relationship. *Id.* at 614. Employment for a substantial period of time is sufficient to

support a valid employment agreement. *Id.* France worked for JSG for more than five months, and JSG does not dispute that sufficient consideration supported the Agreement. Second, an enforceable restrictive covenant must guard some legitimate business interest of the employer, and its terms must be reasonable and necessary to guard that interest. *Id.* An employer has a legitimate business interest justifying a covenant not to compete where either (1) the former employee acquired trade secrets or other confidential information through her employment and subsequently tried to use it for her own benefit, or (2) the customer relationships are near-permanent and, but for the employee's association with the employer, the employee would not have had contact with customers. *Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 666 (7th Cir. 1999). Trade secrets are considered confidential information and a legitimate business interest sufficient to support a covenant not to compete. *Stenstrom Petroleum Servs. Grp., Inc. v. Mesch,* 874 N.E.2d 959, 971 (Ill. App. Ct. 2007).

B

As discussed below, the court finds a substantial likelihood that France learned confidential information qualifying as trade secrets during her employment at JSG. For example, she learned the particular needs of and negotiation positions of client Barnes, as well as the unique qualifications of employee Flanagan and his bargaining position with respect to Barnes. *See, e.g., The Agency,*

- 10 -

*Inc.*, 839 N.E.2d at 615-16 (explaining that knowledge of clients' needs, expenses, and price markups, for example, can constitute trade secrets). The court therefore holds that the non-compete clauses protect a legitimate business interest and that the Agreement is enforceable.

The court finds a substantial likelihood that JSG will succeed on its claim that France breached the geographical limitations of the Agreement. The Agreement provides that France will not, for a period of six months following the termination of her employment with JSG, "engage in a business similar to" JSG's within 50 miles of any JSG office. P. App. 8. Since leaving JSG, France has worked for Apollo out of her home in Duncanville, Texas, which she admits is located within 50 miles of JSG's Arlington, Texas office. JSG and Apollo both conduct business with clients located across the country, not just in the Dallas metropolitan area. Although France does not work in an Apollo office located within 50 miles of a JSG office, she nevertheless engages in a business similar to JSG's by working for Apollo within this geographical area. The determinative fact for Illinois courts is that France works for Apollo, even if not in an Apollo office, within 50 miles of a JSG office. *See, e.g., Hanchett Paper Co. v. Melchiorre*, 792 N.E.2d 395, 396-98, 404 (Ill. App. Ct. 2003) (affirming preliminary injunction where former employee of shipping and packaging company began to work for another shipping and packaging company).

Additionally, JSG has established a substantial likelihood that France violated the confidentiality provisions of the Agreement. JSG asserts that France misappropriated JSG's trade secrets by using its confidential sales, employee pricing, customer, and employee identity information to secure the Barnes contract for Apollo, and to secure the placement of Flanagan and possibly other employees with Barnes. JSG posits that these actions violate clauses in the Agreement that provide that, for a period of six months following the termination of her employment with JSG, France will not (1) solicit business from customers or potential customers of JSG whom she may have encountered in the course of her employment with JSG, or (2) solicit employees of JSG for employment through another company. JSG also maintains that this misappropriation violates the clause in the Agreement requiring France to preserve the secrecy of JSG's confidential information she encountered as a JSG employee. France argues that she never encountered any of JSG's confidential information or trade secrets during the course of her employment and, as a result, could not have disclosed or used such information. France also posits that Apollo's relationship with Barnes predates her employment with Apollo, and that she has not solicited any of JSG's existing clients.

In Illinois, trade secrets are protected by the Illinois Trade Secrets Act ("ITSA"), 765 Ill. Comp. Stat. Ann. 1065/1-9 (West

2010).  *See also* 765 Ill. Comp. Stat. Ann. 1065/8 (West 2010) ("[T]his act is intended to displace . . . other laws of this State providing civil remedies for misappropriation of a trade secret."). *See also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (per curiam) (recognizing that Illinois has abolished common law theories of trade secret misappropriation).  The statute provides injunctive relief for any actual or threatened misappropriation of trade secrets.  765 Ill. Comp. Stat. Ann. 1065/3(a) (West 2010).  To establish a violation of the ITSA, a plaintiff is required to prove that information was "'(1) a trade secret; (2) misappropriated; and (3) used in the defendant's business.'" *Sys. Dev. Servs., Inc. v. Haarmann*, 907 N.E.2d 63, 72 (Ill. App. Ct. 2009) (quoting *Delta Med. Sys. v. Mid-Am. Med. Sys., Inc.,* 777 N.E.2d 768, 780 (Ill. App. Ct. 2002)).

JSG must meet two requirements to show that its information is a trade secret under the ITSA.  First, it must establish that the information was sufficiently secret to give it a competitive advantage.  *See* 765 Ill. Comp. Stat. Ann. 1065/2(d)(1) (West 2010); *see also Stenstrom Petroleum Servs.*, 874 N.E.2d at 971.  Second, it must prove that it took affirmative measures to prevent others from acquiring or using the information.  *See* 765 Ill. Comp. Stat. Ann. 1065/2(d)(2) (West 2010); *see also Stenstrom Petroleum Servs.*, 874 N.E.2d at 971.  Although common law theories of trade secret misappropriation are abolished, Illinois courts often consider six

common law factors to decide whether a trade secret exists. *See,*
*e.g., Liebert Corp. v. Mazur*, 827 N.E.2d 909, 921 (Ill. App. Ct.
2005) (applying factors to determine whether customer lists were
trade secrets); *Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d
209, 215 (Ill. App. Ct. 1995) (same). These are: "(1) the extent
to which the information is known outside of [the plaintiff's]
business; (2) the extent to which it is known by employees and
others involved in [the plaintiff's] business; (3) the extent of
measures taken by [the plaintiff] to guard the secrecy of the
information; (4) the value of the information to [the plaintiff]
and to [the plaintiff's] competitors; (5) the amount of effort or
money expended by [the plaintiff] in developing the information;
[and] 6) the ease or difficulty with which the information could be
properly acquired or duplicated by others." *ILG Indus.*, *Inc. v.*
*Scott*, 273 N.E.2d 393, 396 (Ill. 1971).

Considering these factors, the court finds that JSG has
established a substantial likelihood that France has
misappropriated trade secrets. "'[W]hile an employee . . . can
take with him general skills and knowledge acquired during the
course of his employment, he may not take confidential
particularized information disclosed to him during the . . .
employer-employee relationship . . . which are unknown to others in
the industry and which give the employer advantage over his
competitors.'" *The Agency, Inc.*, 839 N.E.2d at 615. At least some

of the information France knew about JSG employees and customers was unknown to others in the industry and gave her new employer, Apollo, an advantage over its competitors. Illinois courts recognize that "[p]rior knowledge of the needs of a prospect, the type of products which would satisfy these needs, and the proper application of these products would certainly assist a salesman in persuading the prospect to change its supplier." *Id.* at 616 (internal quotation marks omitted). While negotiating an agreement between Barnes and JSG, France learned about Barnes's needs and the type of staffing company employee that might best serve Barnes. Information about a company's expenses and markups are of similar value. *See Lyle R. Jager Agency, Inc. v. Steward*, 625 N.E.2d 397, 402 (Ill. App. Ct. 1993). As a result of her negotiations with Barnes on behalf of JSG, France was also familiar with both companies' bargaining positions. Moreover, France had personal contact with both Barnes and JSG employees who could be placed with Barnes, which increased her ability to provide known employees to Barnes through another staffing company. *See The Agency, Inc.*, 839 N.E.2d at 616-17 (citing *Donald McElroy, Inc. v. Delaney*, 389 N.E.2d 1300, 1306 (Ill. App. Ct. 1979) ("In a highly competitive business, personal customer contact and the insider knowledge of the customers' requirements are important to the continued success of the business."). She also developed this knowledge at a cost to JSG because, when she traveled to Barnes's West Chester, Ohio

facility to evaluate Barnes's needs and negotiation positions, she did so at the expense and initiative of JSG. Under Illinois law, misappropriation can also be established by showing inevitable disclosure, i.e., that an employee's new employment will inevitably lead her to rely on her former employer's trade secrets. *See Liebert Corp. v. Mazur*, 827 N.E.2d 909, 927 (Ill. App. Ct. 2005).

Moreover, JSG made efforts to keep secret the details of its negotiations with Barnes and the identities of employees potentially to be placed at Barnes. For example, JSG included in France's contract confidentiality clauses, discussed below, that obligated her not to disclose information like price lists and customer identities learned as a JSG employee. *See Stampede Tool Warehouse,* 651 N.E.2d at 217 (considering confidentiality agreements to be secrecy efforts weighing in favor of trade secret determination). In sum, the court concludes that the information France knew about Barnes and about the employees JSG considered placing with Barnes is protected because it "could give [her] an unfair competitive advantage in placing workers with [JSG's] clients." *The Agency, Inc.*, 839 N.E.2d at 617.

The court recognizes that Illinois courts have not found customer lists to be trade secrets where an employee contacts or solicits customers of a former employer and the services are common and customers' information is publicly available. *See, e.g., Sys. Dev. Servs.*, 907 N.E.2d at 75 (holding contact information of

potential computer network services clients was not a trade secret because all businesses are now potential customers of computer network services and their contact information is publicly available); *Carbonic Fire Extinguishers v. Heath,* 547 N.E.2d 675, 677 (Ill. App. Ct. 1989) (holding customer list and pricing information of fire extinguisher business not a trade secret where service was commonly used so potential clients could be easily recognized and market was well established). Illinois courts also presume that pricing information is not entitled to trade secret protection when it may become widely available, because customers in the market are likely to share this information with each other. *See, e.g., Del Monte Fresh Produce, N.A. v. Chiquita Brands Int'l, Inc.*, 616 F.Supp.2d 805, 819-20 (N.D. Ill. 2009). But the services JSG offered were relevant to a narrower market. *See Stampede Tool Warehouse,* 651 N.E.2d 209 at 215 (finding customer list entitled to trade secret protection in narrow, specialized market where development of customer lists required serious time and expense). Unlike customers of a widely-used service in a well-developed market, Barnes is not likely to know or be able to ascertain the identity of other JSG customers and in turn compare the rates paid for their respective services. Even if Barnes were able to do so, each company's staffing needs——unlike customer needs in a broader market——are likely so customized that the rate comparison might not enable them to decipher JSG's pricing scale. Moreover, the

information France knew about Flanagan and other potential Barnes employees was obtained through JSG's efforts.  Flanagan's rates, background, and skills are not as widely known as publicly available addresses and telephone numbers commonly included in customer lists.  The court thus finds a substantial likelihood that JSG will succeed on the merits of its claims that France breached the confidentiality and solicitation provisions of the Agreement.[4]

V

The court next finds that there is a substantial threat that JSG will suffer irreparable injury if the court does not grant an injunction.  "The threat of irreparable injury is related to proof of a protectable interest, and once such an interest is established, there is a presumption that injury to the party seeking the injunction will follow if the interest is not protected."  *Mohanty v. St. John Heart Clinic, S.C.*, 832 N.E.2d 940, 943 (Ill. App. Ct. 2005).  JSG has a protectable interest in its trade secrets.  *See Stenstrom Petroleum Servs.*, 874 N.E.2d at 971.  It will suffer irreparable harm in the absence of an injunction since it is substantially likely that France misappropriated JSG's trade secrets by arranging for Flanagan to be

_____

[4]Because the court has found a substantial likelihood that JSG will succeed on the merits of its claim that France breached the Agreement, it need not consider the likelihood that JSG will succeed on the merits of its misappropriation or breach of duty of loyalty claims.  The determination that JSG is likely to succeed on its breach of contract claim is sufficient to support a preliminary injunction.

placed with Barnes through Apollo. *See Ultraviolet Devices, Inc. v. Kubitz*, 2009 WL 3824724, at *3 (N.D. Ill. 2009) ("Illinois law presumes that irreparable harm will be done in the absence of injunctive relief if trade secrets are misappropriated."); *see also Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F.Supp.2d 688, 700-01 (N.D. Ill. 2004) (explaining that trade secret misappropriation causes irreparable harms like loss of market share and more challenging market environment). Irreparable harm is similarly presumed "in cases where a former insider lures customers away through a competing business" because a company has a protectable interest in the relationships it has developed with long-term clients. *Jano Justice Sys., Inc. v. Burton*, 636 F.Supp.2d 763, 767 (C.D. Ill. 2009); *see also Tyler Enters. of Elwood, Inc. v. Shafer*, 573 N.E.2d 863, 866 (Ill. App. Ct. 1991). The court has found a substantial likelihood that France used the information she learned from JSG about JSG's pricing and business methods, Barnes's business needs, and Flanagan's qualifications to place Flanagan through Apollo. JSG has a protectable interest in this information. It also has a protectable interest in similar information that France may know and may still use in the future. Illinois also recognizes that misappropriation can be established by showing inevitable disclosure.

A party opposing the injunction "may rebut this presumption by demonstrating that [the movant] will not suffer any harm if the

injunction is not granted." *Computer Assocs. Int'l*, 333 F.Supp.2d at 700. France argues that JSG has not suffered and will not suffer irreparable harm because any such harm is easily measured according to the monetary value of potentially lost client contracts and employee salaries. But France has failed to rebut the presumption because she has not shown that money damages will adequately compensate all forms of injury that JSG is likely to suffer in the absence of an injunction. Because Illinois law presumes irreparable injury in the absence of injunctive relief and France has not rebutted this presumption, the court determines there is a substantial likelihood that JSG will suffer irreparable injury absent injunctive relief.

VI

The court also finds that the balance of the hardships weighs in favor of injunctive relief and that an injunction will not disserve the public interest. *See, e.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd,* 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). Because the court is granting an injunction that enforces the terms of the Agreement, it is not imposing a hardship on France that exceeds the terms to which she has already agreed. In contrast, there is a substantial threat that JSG will suffer irreparable injury if the court does not grant an injunction. If, for example, France continues to work for Apollo, a JSG competitor, JSG could

lose additional client contracts or employee placements, particularly with potential clients whom France knew during her time at JSG.

The court holds that granting injunctive relief will not disserve the public interest because "it is in the public interest to uphold contracts and to enforce a remedy to which the parties have expressly agreed[.]" *Amerispec, Inc. v. Metro Inspection Servs., Inc.*, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001) (Fitzwater, J.) (citing Tex. Bus. & Comm. Code Ann. § 15.51(a)).

VII

Finally, the court must determine the scope of the preliminary injunction. To address the substantial threat of irreparable injury, France must be enjoined from violating the terms of the Agreement by engaging in a business similar to JSG's within 50 miles of a JSG office for six months following the termination of her employment with JSG, as provided in the Agreement. She must not work for Apollo within a 50-mile radius (including out of her Duncanville, Texas home) until after March 2, 2011. She must also be enjoined from contacting or soliciting for employment any potential or actual JSG employee or customer with whom she had contact or to whom she was assigned during her employment with JSG until after March 2, 2011. France must also be enjoined from using or disclosing additional confidential information learned during her employment at JSG, including information like the requirements

and particular bargaining positions of JSG clients and businesses with whom France negotiated as a JSG employee. The court will require that JSG post a bond in the sum of $25,000.[5]

*     *     *

For the foregoing reasons, plaintiff JSG's November 5, 2010 application for a preliminary injunction is granted, and a preliminary injunction is being filed today.

January 13, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[5]After considering the relevant factors, the court concludes that a bond in the amount of $25,000 is proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. This bond is lower than might otherwise be required because the duration of the preliminary injunction is limited in several respects. If France can show, however, that the bond should be increased, she may move separately for appropriate relief. *See, e.g.*, *Gryphon Master Fund, L.P. v. Path 1 Network Techs., Inc.*, 2007 WL 1723703, at *8 (N.D. Tex. June 14, 2007) (Fitzwater, J.) (holding that defendant could move separately to have bond increased); *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*, 1988 WL 161314, at *3 (N.D. Tex. Dec. 14, 1988) (Fitzwater, J.) ("Either party may move the court in writing to increase or decrease the bond for good cause shown.").