```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF TEXAS
            DALLAS DIVISION
```

JOHNSON SERVICE GROUP, INC.,      §
                                  §
    Plaintiff-                   §
    counterdefendant,             §
                                  §  Civil Action No. 3:10-CV-1988-D
VS.                               §
                                  §
OLIVIA FRANCE,                    §
                                  §
    Defendant,                    §
                                  §
    and                           §
                                  §
APOLLO DESIGN SERVICES, INC.,     §
                                  §
    Defendant-                    §
    counterplaintiff.             §

## MEMORANDUM OPINION AND ORDER

Plaintiff-counterdefendant Johnson Service Group, Inc. ("JSG") moves the court to hold defendant Olivia France ("France") in civil contempt for violating the preliminary injunction entered in this case. Following an evidentiary hearing, and for the reasons that follow,[1] the court grants the motion to the extent set forth below.

I

The background facts and procedural history of this case are set out in the court's memorandum opinion addressing JSG's motion for a preliminary injunction. *See Johnson Serv. Grp., Inc. v. France*, ___ F.Supp.2d ___ 2011 WL 111582, at *1-2 (N.D. Tex. Jan.

---

[1]As permitted by Fed. R. Civ. P. 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

13, 2011) (Fitzwater, C.J.) ("*Johnson I*"). In the discussion that follows, the court will add to *Johnson I* the facts that it has found by clear and convincing evidence from the June 8, 2011 evidentiary hearing that establish that France should be held in civil contempt.

II

To prove that France should be held in civil contempt, JSG "must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). In the contempt context, "clear and convincing evidence" is "that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to truth of the allegations sought to be established, evidence so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted) (adopting in contempt context definition of clear and convincing evidence used in attorney disbarment proceeding) (quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)). "The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc. v.*

*Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (citing *NLRB v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984)). "'[I]n civil contempt proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order.'" *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980) (quoting *United States v. Ross*, 243 F. Supp. 496, 499 (S.D.N.Y. 1965)). "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002).[2]

### III

The preliminary injunction contains four categories of restrictions on France's conduct. JSG failed to proved by clear and convincing evidence that France violated clause 1, 3, or 4. JSG did prove by clear and convincing evidence, however, that France

---

[2]France testified at the hearing that she did not intend to violate the preliminary injunction. Assuming that this testimony is credible, it is immaterial to the contempt question because she "actually failed to comply with the court's order." *Am. Airlines*, 228 F.3d at 581.

France also testified, and her newly-appointed counsel emphasized, that France did not obtain a copy of the preliminary injunction until several weeks after the court filed it. But France was represented by counsel at the time the preliminary injunction was filed. "Courts ordinarily deem a party represented by counsel to have notice of all facts, notice of which can be charged upon the attorney." *Resendiz v. Dretke*, 452 F.3d 356, 361 (5th Cir. 2006) (habeas case) (internal quotation marks and citations omitted). Because France was represented by counsel at the time the court issued the preliminary injunction, she is deemed to have had notice of the contents of the preliminary injunction.

violated clause 2, which prohibited France, "through March 2, 2011, from engaging or participating in any business similar to that of JSG within a 50-mile radius of any JSG office, including, but not limited to, defendant Apollo Professional Solutions, Inc."

JSG introduced in evidence a February 9, 2011 email exchange between France and Guerdy Claimon ("Claimon").[3] Claimon sent the email as "President and CEO" of OmniGroup North America, LLC ("OmniGroup"). P. Exh. 2. JSG also introduced OmniGroup's organizational chart, which described OmniGroup as a "technical staffing services" firm that provides "contract personnel to a wide range of clients," including clients in "information technology, engineering, and other technical/administrative staffing." P. Exh. 3.[4] JSG Senior Vice President and CFO James Filarski ("Filarski") testified that JSG is an employee staffing company specializing in

---

[3]JSG learned of France's involvement with Claimon when it obtained access to Claimon's company computer while investigating his conduct.

[4]France was shown on the organizational chart as holding one of OmniGroup's top level positions: one of two "Exec. V.P." positions, which were listed immediately below Claimon, who held the position of "President and CEO." P. Exh. 3. In response to the transmittal email, France stated: "Looks Good. I really didn't see anything that I would change. I'll talk with you when you have time." P. Exh. 2. Because this organizational chart could have referred to France's anticipated role with OmniGroup after March 2, 2011, the court is not holding her in contempt based on this evidence alone. But the fact that she did not protest Claimon's inclusion of her as a high-ranking officer of OmniGroup, a JSG competitor, tends to confirm her participation in OmniGroup's business during the period when clause 2 was in effect, which *is* a basis for holding her in contempt.

placing personnel in a wide variety of industries, including aerospace, engineering, power utilities, and administrative support. And in a January 18, 2011 email sent from Claimon to France, Claimon stated that OmniGroup was pursuing a business opportunity with a company called Progress Energy, which Filarski testified was also a JSG client. *See also* P. Exh. 2.

France responded to Claimon's February 9, 2011 email, which he sent in his capacity as OmniGroup's CEO, by stating: "Thought you should have some kind of status. I have contacted four potential candidates (via email) for two of the reqs."[5] P. Exh. 4. JSG thus proved by clear and convincing evidence that France participated in OmniGroup's staffing services business by attempting to help Claimon fill open positions at one of OmniGroup's client companies. By engaging in this conduct prior to March 3, 2011, France "engag[ed] or participat[ed] in a business similar to that of JSG," in violation of clause 2 of the preliminary injunction. France testified at the hearing that she knew she could not work through March 2, 2011 and was doing this as volunteer work, without compensation. Even accepting this testimony as true, it does not change the result. By her conduct, France was engaging or participating in a business similar to that of JSG.

France's participation in OmniGroup's business also violated

---

[5] Filarski and France testified at the hearing that, in the staffing services industry, a "req" is shorthand for an open position at a client company.

the geographical term in clause 2. The email signature block in Claimon's February 9 email represents that OmniGroup's office is located at the same address as JSG's Tampa, Florida office. P. Exhs. 2, 3.

Accordingly, JSG proved by clear and convincing evidence that France violated clause 2 of the preliminary injunction, and the court therefore holds her in civil contempt.

IV

A

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 582 (5th Cir. 2005). "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines, Inc.,* 228 F.3d at 585. The court's contempt power is "broad . . . encompassing . . . remedial powers 'determined by the requirements of full remedial relief,' as necessary 'to effect compliance with [the court's] decree.'" *In re Bradley,* 588 F.3d 254, 265 (5th Cir. 2009) (citations omitted). It includes the "'imposition of fines, the awarding of costs, and the shifting of fees.'" *Id.* (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 894 F.2d 696,

702 (5th Cir. 1990)).

B

JSG requests that the court impose the following contempt sanctions: extend the preliminary injunction period for an additional period of 96 days (i.e., double the 48 days originally imposed); award JSG its reasonable attorney's fees; and require that France cooperate in providing discovery pertinent to JSG's separate litigation in Florida against Claimon.

The court concludes in its discretion that it should impose the terms of clause 2 for an additional period of 48 days. France was originally subject to clause 2 of the preliminary injunction for a 48-day period. She should be required as a sanction to comply fully with the restrictions imposed by clause 2, and for the full period for which it was in effect. Clause 2 will therefore continue to apply to France from today through July 27, 2011.

The court also awards JSG its reasonable attorney's fees in prosecuting this contempt motion. JSG must file a fee application within 14 days of the date this memorandum opinion and order is filed.[6]

---

[6]The court is not required to consider a litigant's financial situation "in determining *whether* to award attorneys' fees against that party." *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 (5th Cir. 1990). But France's apparent impecunious financial situation may make it difficult for JSG to collect attorney's fees. For example, if France is financially unable to pay a fee award, she would not be subject to being held in contempt as a result. *See, e.g., Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 799 F.2d 1510, 1521 (11th Cir. 1986) ("A party held in contempt may defend

The court denies JSG's request for an order requiring France to cooperate with JSG's discovery efforts concerning its litigation against Claimon. JSG can obtain discovery from France under the means of discovery provided by the Federal Rules of Civil Procedure. The court declines to impose these requirements as a contempt sanction for conduct that was unrelated to her responsiveness to discovery requests.

\* \* \*

For the reasons explained, the court holds France in civil contempt and reimposes clause 2 of the preliminary injunction for a period of 48 days, beginning today. The court also awards JSG its reasonable attorney's fees, to be calculated upon JSG's timely application (assuming it seeks such fees). The court declines to hold France in civil contempt on any other basis, or to award the other relief that JSG requests.

**SO ORDERED.**

June 9, 2011.

                                        _____
                                        SIDNEY A. FITZWATER
                                        CHIEF JUDGE

---

his failure to obey a court's order on the grounds that he was unable to comply."); *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) ("Inability to comply with an order is ordinarily a complete defense to a charge of contempt."). The court therefore suggests that, before filing a fee application, JSG consider whether pursuing such fees is warranted.